STATE OF MAINE                                    SUPERIOR COURT
Penobscot, SS.                                    Docket No. CV-19-354

TOWN OF HANCOCK                    )
                                   )
        v.                         )
                                   )    JUDGMENT
PCJ, LLC and                       )
BRIDGETWIN, LLC                    )
                                   )
        Defendants                 )

This Rule 80K matter came before the Court for hearing on January 30 and February 20, 2020.

The Court finds the following facts:

1. The Jordan family owns/controls three (3) or more different companies: PCJ, LLC (PCJ); Bridgetwin, LLC (Bridgetwin); and R. F. Jordan & Sons Construction, Inc. (R. F. Jordan). Patrick Jordan has an ownership interest in and manages all of these companies;

2. In September of 2015, PCJ purchased certain real estate in Hancock, Maine, known as the "Thorsen Farm" property, and it contained approximately 85 acres. The land included the Thorsen house, about 60 acres of blueberry fields, and woods;

3. In May of 2004, the Town of Hancock amended its "Mineral Extraction Ordinance," and this version of the ordinance remained in effect through September 19, 2017. The Mineral Extraction Ordinance was substantially amended on September 19, 2017. The Town's Mineral Extraction Ordinance was subject to a moratorium from October 11, 2016 to September 19, 2017;

4. Between 2004 and September 19, 2017, Article IV, section 7A of the Mineral Extraction Ordinance provided: "Before a Final Plan has been approved, the following is not permitted: 1. No material from any MEO may be sold. 2. Development of the infrastructure of the MEO is not permitted, including buildings, roads, and utility installations";

5. In late March or early April 2016, PCJ applied to the Town of Hancock for a Mineral Extraction Operations Permit (pit permit) to operate a gravel pit on the PCJ real estate in question. R. F. Jordan was listed as the proposed "operator";

6. Stephen Salsbury, a surveyor, was designated as an agent of PCJ and he prepared the Mineral Extraction Application;

7. On April 5, 2016, the Code Enforcement Officer (CEO) wrote a memo to the Town Planning Board and suggested that certain additional specific information was required in connection with PCJ's application. The applicant supplied the additional information;

1

8. Thereafter, the Planning Board asked for additional information several different times. PCJ representatives attended several Planning Board meetings between April 2016 and September 2016. PCJ continued to provide the requested additional information;

9. PCJ's initial Mineral Extraction permit application called for a road to be constructed from the Thorsen Road to the proposed gravel pit, and the road was to intersect with the Thorsen Road north of the "Thorsen Farm";

10. The neighbors in the area of the proposed access road to the proposed gravel pit raised several objections;

11. On August 5, 2016, Bridgetwin purchased real property in Hancock from the Campbells in an arm's-length transaction. This property is at the southwesterly corner of the blueberry fields owned by PCJ. At the time of the purchase, Mr. Jordan hoped to build a road over the Campbell property to serve the gravel pit and to abandon the previously considered planned road north of the "Thorsen Farm";

12. The Mineral Extraction permit application was pending when Bridgetwin purchased the Campbell property;

13. The real estate is depicted below (the handwritten comments were made by the undersigned) (part of the road in question was darkened by the undersigned):



2

14. On October 11, 2016, a moratorium on the consideration of Mineral Extraction permits went into place. PCJ's permit application was pending when the moratorium went into effect. This moratorium stopped any action from being taken on PCJ's Mineral Extraction permit application;

15. The moratorium was initially for 180 days, but in April of 2017, the Selectman approved an extension for another 180 days;

16. In the fall of 2016, Patrick Jordan had a discussion with Diane Wilbur, owner of the property abutting the "Campbell property." During this discussion Ms. Wilbur expressed concern to Mr. Jordan about trucks using the road to haul gravel from the proposed pit. Mr. Jordan agreed to take certain action to lessen the impact of the road on Ms. Wilbur;

17. Rudy Bagley, the Road Commissioner for the Town of Hancock, approved the "curb cut" in October of 2016. Mr. Bagley testified that he has been the Town of Hancock's Road Commissioner for 30 years, and that he was not aware of any fee being charged for permission for a "curb cut";[1]

18. In December of 2016, Mr. Jordan and Mr. Salsbury met with CEO Larson to discuss permissible alternative uses for the property in question now that the moratorium was in effect. In particular, the three participants discussed the construction of a road in connection with the growing and harvesting of blueberries. Mr. Larson agreed that an agricultural road to service the blueberry fields could be built without a permit;

19. An option under consideration by the Jordan entities was to sell the old Thorsen farm and a little acreage to generate money from the property. The "farmhouse," which had been extensively renovated, may be worth about $300,000.00;

20. In March of 2017, R. F. Jordan began building a road over the "Campbell property." The road went over the "Campbell property" and continued onto the PCJ property. The road ended at the edge of the blueberry field;

21. Before the new road was constructed, there was an old abandoned pit near the Thorsen Road just south of the Campbell house. This is the area where construction of the new road began off the Thorsen Road. A knoll existed on the easterly side of this abandoned pit. The knoll was cut down and leveled and the new road was constructed using material from the knoll;

---

[1] The Court is satisfied that the CEO misplaced or otherwise did not act promptly on two Applications by Patrick Jordan for curb cuts. Both Applications were approved by the Road Commissioner in October of 2016. The CEO signed one of the Applications in July of 2017, after Mr. Jordan visited the CEO and observed the check sitting on the CEO's desk.

22. Initially, Mr. Larson testified that the road, as constructed, went from the Thorsen Road to the proposed pit.[2] This clearly is not accurate. After a break, the CEO "clarified" his testimony to indicate that the last portion of the road to the proposed pit was merely some remnants of a path that had been on the face of the earth for years, not part of the road constructed by R. F. Jordan;

23. Initially, Mr. Jordan testified that the road, as constructed, ended at the back line of the Campbell property and at the beginning of the blueberry fields. However, after reviewing additional photographs, Mr. Jordan agreed that the road, as constructed, continues some 300+/- feet beyond the Campbell line, which is where the blueberry fields begin;

24. The new road, as constructed, is about 950+ feet long. The distance from the Thorsen Road to the proposed pit is approximately 2000 feet;[3]

25. The diagram in paragraph 13 above depicts the road as it was proposed in the Mineral Extraction permit application after the change was made in the location of the proposed road. The colored-in portion of the road is the portion the Court finds was actually constructed by R. F. Jordan. The portion of the depicted road that is not colored-in is the remainder of the road that was proposed to service the proposed gravel pit. The Court finds that the road, as constructed in March of 2017, extends only to the edge of the blueberry fields (the darkened portion of the road). While there may be some type of primitive path from the end of the road as constructed to the area of the proposed pit, the road constructed in March of 2017 did not extend beyond the edge of the blueberry field;

26. The aerial view of the property very clearly shows that the constructed road ends quite far from the proposed gravel pit area. The road ends where the blueberry fields start, and it is in a position to serve the blueberry fields;

27. At the time the road was constructed, its purpose and intent was to serve the blueberry fields;

28. In late March 2017, Mr. Hunt, one of the Selectmen, drove over the Thorsen Road and noticed construction of a road over the Campbell property. Mr. Hunt's testimony was that the road was carved into a hill and this is consistent with Mr. Jordan's testimony that a knoll was cut to level the area and the material from the knoll was

---

[2] On the recording at approximately 8:14 minutes into Mr. Larson's testimony the following questions were asked and answers given (as best as the undersigned could transcribe):

Gilbert: When you got there, what did you see?
Larson: I saw a road that looked like a – graveled. There was a road there was a . . . cut through a small berm and the road continued all the way down to that proposed gravel pit area.
Gilbert: How far up did you go that particular day?
Larson: I went all the way.

[3] Plaintiff's Exhibit #22 recites a distance of 2039 feet.

4

used to construct the road. Mr. Hunt called CEO Larson, and Mr. Hunt asked Mr. Larson to take a look at the activity;

29. Mr. Larson went to the property, and observed the road construction;

30. On March 30, 2017, Mr. Larson issued a "Stop Work Order";

31. On April 4, 2017, Mr. Jordan and Mr. Salsbury met with CEO Larson and Selectman Hunt. At that time, Mr. Jordan and Mr. Salsbury told Mr. Larson and Mr. Hunt that the road was an agricultural road to serve the blueberry fields (just as had been discussed with Mr. Larson in December of 2016). The CEO and Mr. Hunt did not accept this explanation;

32. On April 4, 2017, the Town served PCJ with a Notice of Violation and a typewritten Stop Work Order;

33. At the time the road was constructed over the "Campbell property," Mr. Jordan intended the road to service the blueberry fields. One of the reasons for constructing the road was to eliminate/reduce the traffic on the old paths near the "Thorsen house". Selling the "Thorsen house" was under consideration. Moreover, moving the blueberry road closer to the Merrill Blueberry Plant lessened the length and pitch of the public road over which the blueberries would have to be transported from the field to the processing plant;

34. Mr. Jordan harbors the hope that if a Gravel Pit permit is issued in the future, the road currently servicing the blueberry fields, with additional improvements, might service the gravel pit as well as the blueberry fields;

35. PCJ never withdrew its Mineral Extraction permit application; and,

36. On September 19, 2017, a new "Mineral Extraction" ordinance was passed. The new ordinance did not address any process for any applications then pending before the Planning Board. Instead, the new Ordinance, as promulgated, set forth a process for new applications only.

## ANALYSIS

PCJ/R. F. Jordan was "an applicant" for a Mineral Extraction permit in March/April of 2017. It did not withdraw its application. While the new Ordinance set forth a process only for new applications, it was not in effect in March of 2017 and the PCJ application remained pending in March of 2017.

5

All parties agree that an "agricultural road" can be constructed in Hancock without a permit. The parties disagree whether the road, as constructed, is an "agricultural road." This is the essential dispute in this case.

The Town ordinances do not provide a definition of an "agricultural road." The Town argues that "common sense" defines an "agricultural road."

In December 2016, Mr. Jordan and Mr. Salsbury specifically discussed with CEO Larson the possibility of constructing an agricultural road over the property in question. There was a general agreement that an agricultural road could be constructed without a permit.

The Town argues that an "agricultural road" does not have the character of the constructed road. As noted above, there is no definition of an "agricultural road" in the Town's ordinances. Additionally, R. F. Jordan is in the business of building roads, and the Court does not find it unreasonable that a road builder would build a decent road on its (or a related company's) property, particularly when the materials are on-site. The mere fact that the road is wider than what the Town thinks an agricultural road should be, and that the location of the road is in the location of the proposed road to the proposed pit, is not dispositive of the question.

When constructed, the purpose of the 900+ foot road from the Thorsen road to the edge of the blueberry fields was to service the blueberry fields. The blueberry fields are active, and include bi-annual harvesting and regular maintenance. The intent of the road when it was constructed was to service the blueberry fields. The 900 + foot road stops at the edge of the blueberry fields and this is far short of the proposed gravel pit. The road is no longer than reasonable to service the blueberry fields. It is another 1000 +/- feet to the proposed pit. There is a legitimate purpose for the road that is wholly independent from servicing a proposed gravel pit. While the road, with further improvements, *might* have an additional purpose *if* a gravel pit permit is issued in the future, this does not eliminate the current legitimate purpose of the road

6

serving the blueberry fields. The road ends far short of the area of the proposed pit and it is in a position to serve the blueberry fields.

Thus, the Court determines that the Town has failed to establish that the road, as constructed, is "infrastructure" for the proposed gravel pit.[4] The fact that Mr. Jordan harbored a hope that the road at some time in the future might be improved and also service the pit did not make it infrastructure for the proposed pit operation when it was constructed. There is no requirement that while a permit application is pending, a property owner must stop other lawful, independent activity on its property to generate income from the property. The Town has failed to establish by a preponderance of the evidence that a land use violation was committed.


Judgment entered in favor of the Defendants.

The Clerk shall enter this Order upon the record by reference.

Date: February 26, 2020

Ann M. Murray, Justice
Maine Superior Court
Cross-designated


ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 3-4-2020


---

[4] *If* the road as constructed extended to an area closer to the proposed gravel pit and/or there was no independent legitimate reason for the road, the analysis would be different. Instead the road stops at the edge of the blueberry fields and services the blueberry fields.

7